Katherine L. Matthews
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
999 18th Street, Suite 370
Denver, CO 80202
303-844-1365 (phone)
303-844-1350 (facsimile)
Katherine.Matthews@usdoj.gov
Attorney for Plaintiff United States

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PSF, INC., PETER PAN SEAFOOD COMPANY, LLC, & SILVER BAY SEAFOODS - VALDEZ, LLC<br><br>Defendants. | Civ. No. **3:24-cv-00112-HRH** |

# COMPLAINT

The United States of America, by authority of the Attorney General of the United

States and through the undersigned attorneys, acting at the request of the Administrator of

COMPLAINT (*U.S. v. PSF, Inc. et al.*), pg. 1

the United States Environmental Protection Agency (EPA), files this complaint and alleges as follows:

## I. NATURE OF ACTION

1. This is a civil action brought pursuant to Section 309 of the Clean Water Act (CWA), 33 U.S.C. § 1319, against Defendants PSF, Inc., Peter Pan Seafood Company, LLC, and Silver Bay Seafoods-Valdez, LLC. The United States seeks injunctive relief and civil penalties against Defendants for violations of Section 301(a) of the CWA, 33 U.S.C. § 1311(a), including violations of the permit conditions and limitations of the National Pollutant Discharge Elimination System (NPDES) permits issued to Defendants by the EPA and the Alaska Department of Environmental Conservation (ADEC) under Section 402(a) of the CWA, 33 U.S.C. § 1342(a).

## II. PARTIES

2. Plaintiff is the United States of America. Authority to bring this action is vested in the Attorney General of the United States by 28 U.S.C. §§ 516 and 519 and 33 U.S.C. § 1366.

3. Defendant PSF, Inc. (PSF), formerly known as Peter Pan Seafoods, Inc., is a privately held corporation duly organized under the laws of the State of Washington, which owned and operated fish processing facilities in Dillingham, King Cove, Port Moller, and Valdez, Alaska at all times relevant to this Complaint until January 1, 2021.

4. Defendant Peter Pan Seafood Company, LLC (Peter Pan) is a privately held corporation duly organized under the laws of the State of Washington, which owns and

COMPLAINT (*U.S. v. PSF, Inc. et al.*), pg. 2

operates fish processing facilities in Dillingham, King Cove, and Port Moller, Alaska and has owned them since January 1, 2021. Peter Pan also owned a fish processing facility in Valdez, Alaska from January 1, 2021 to April 19, 2024.

5. Defendant Silver Bay Seafoods-Valdez, LLC (SBS) is a privately held corporation duly organized under the laws of the State of Alaska, which owns and operates two fish processing facilities in Valdez, Alaska. Only one of SBS's seafood processing facilities in Valdez is subject to the claims in this Complaint – the facility that was formerly owned and operated by both PSF and Peter Pan and is located at 219 South Harbor Drive, Valdez, AK 99686 (Valdez Facility).

6. Each Defendant is a "person" within the meaning of Section 502(5) of the CWA, 33. U.S.C. § 1362(5).

7. For all relevant times until January 1, 2021, PSF owned and operated the Valdez Facility and a facility in King Cove, Alaska (King Cove Facility) (collectively, Facilities). Until January 1, 2021, PSF controlled the operational decisions at the Facilities, including, but not limited to, the discharges of pollutants from the Facilities.

8. From January 1, 2021 to April 19, 2024, Peter Pan owned and operated the Valdez Facility. On April 19, 2024, Peter Pan sold the Valdez Facility to SBS. From January 1, 2021 to today, Peter Pan has owned and operated the King Cove Facility. Peter Pan controls the operational decisions at the King Cove Facility, including, but not limited to, the discharges of pollutants from the facility.

9. From April 19, 2024 to today, SBS has owned and operated the Valdez

COMPLAINT (*U.S. v. PSF, Inc. et al.*), pg. 3

Facility. SBS controls the operational decisions at the Valdez Facility, including, but not limited to, the discharges of pollutants from the facility.

### III. JURISDICTION AND VENUE

10. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1345, because this is a civil action commenced by the United States that arises under the laws of the United States, and pursuant to 28 U.S.C. § 1355, because this is an action in part for the recovery of a penalty incurred under an act of Congress.

11. Venue is proper in this judicial district pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), because Defendants are located and have done or are doing business in this judicial district.

12. Notice of the commencement of this action has been given to the State of Alaska pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b).

### IV. STATUTORY AND REGULATORY BACKGROUND

13. The CWA is designed to restore and maintain the chemical, physical, and biological integrity of the nation's waters. 33 U.S.C. § 1251(a).

14. To accomplish this goal, Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant by any person into waters of the United States except as authorized by, and in compliance with, certain enumerated Sections of the CWA, including Section 402 of the CWA, 33 U.S.C. § 1342.

15. Section 502(12) of the CWA, 33 U.S.C. § 1362(12), defines "discharge of a pollutant" to include "any addition of any pollutant to navigable waters from any point

source."

16. Section 502(6) of the CWA, 33 U.S.C. § 1362(6), defines "pollutant" to include a wide variety of chemical and biological wastes and materials.

17. Section 502(7) of the CWA, 33 U.S.C. § 1362(7), defines "navigable waters" to mean "the waters of the United States, including the territorial seas."

18. Section 502(14) of the CWA, 33 U.S.C. § 1362(14), defines "point source" to mean "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch ... [or] conduit ... from which pollutants are or may be discharged."

19. Pursuant to Section 402 of the CWA, 33 U.S.C. § 1342, the Administrator of the EPA (Administrator) may issue NPDES permits, which authorize the discharge of pollutants into waters of the United States. Section 402 of the CWA, 33 U.S.C. § 1342, directs the Administrator to impose conditions for NPDES permits, including conditions on data and information collection, reporting, and such other requirements as the Administrator deems appropriate. A discharge that is not authorized by a permit is an unauthorized discharge under Section 301 of the CWA, 33 U.S.C. § 1311.

20. On October 31, 2008, ADEC assumed full authority to administer the wastewater and discharge permitting and compliance program for Alaska.

21. Section 309(d) of the CWA, 33 U.S.C. § 1319(d), and 40 C.F.R. § 19.4 establish maximum civil penalties for violations of the CWA, including violations of any condition or limitation in a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342. The maximum civil penalty per day per violation of the CWA is $66,712 for

COMPLAINT (*U.S. v. PSF, Inc. et al.*), pg. 5

violations occurring after November 2, 2015.

22. Section 309(b) of the CWA, 33 U.S.C. § 1319(b), authorizes the EPA to commence a civil action for appropriate relief, including a permanent or temporary injunction, for any violation for which a compliance order under Section 309(a) is also possible. Section 309(a)(3) authorizes EPA to issue compliance orders whenever it finds that any person has violated Section 301 of the CWA or any condition or limitation in a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

## V. FACTUAL ALLEGATIONS

23. PSF is a seafood processing company that owned and operated at least four seafood processing facilities in Alaska, including the Valdez Facility and the King Cove Facility, until January 1, 2021.

24. Peter Pan is a seafood processing and marketing company that has owned and operated at least four seafood processing facilities in Alaska, including the Valdez Facility and the King Cove Facility. It has owned and operated the King Cove Facility, since January 1, 2021 to today. It owned and operated the Valdez Facility from January 1, 2021, to April 19, 2024.

25. Pursuant to Section 402 of the CWA, 33 U.S.C. § 1342, the EPA issued individual and/or general NPDES permits to PSF for each of the Facilities authorizing the discharge of pollutants from the Facilities into waters of the United States subject to certain limitations and conditions. ADEC transferred all of PSF's NPDES permits to Peter Pan on or about January 1, 2021. ADEC transferred Peter Pan's NPDES permit

COMPLAINT (*U.S. v. PSF, Inc. et al.*), pg. 6

from the Valdez Facility to SBS on or about April 19, 2024.

26.     As part of the operation of the Facilities, PSF generated seafood processing wastes, which are "pollutants" within the meaning of Sections 502(6) and (12) of the CWA, 33 U.S.C. §§ 1362(6) and (12).

27.     As part of the operation of the Facilities, Peter Pan generates seafood processing wastes, which are "pollutants" within the meaning of Sections 502(6) and (12) of the CWA, 33 U.S.C. §§ 1362(6) and (12).

28.     As part of the operation of the Valdez Facility, SBS generates seafood processing wastes, which are "pollutants" within the meaning of Sections 502(6) and (12) of the CWA, 33 U.S.C. §§ 1362(6) and (12).

29.     Defendants have discharged pollutants from stationary facilities and associated outfalls, which are "point sources" within the meaning of Section 502(14) of the CWA, 33 U.S.C. § 1362(14).

30.     Defendants' violations of the NPDES permit conditions and limitations resulted in unauthorized discharges of pollutants into various Alaska waters, which constitute "navigable waters" and "waters of the United States" within the meaning of Section 502(7) of the CWA, 33 U.S.C. § 1362(7).

> A.     <u>Violations of the CWA at the Valdez Facility</u>

31.     On September 14, 2001, EPA granted PSF authorization to discharge from its Valdez Facility under the NPDES Alaska General Permit for Seafood Processors No. AK-G52-0000 (Old General Permit). On September 1, 2006, EPA administratively

COMPLAINT (*U.S. v. PSF, Inc. et al.*), pg. 7

extended coverage under the Old General Permit because PSF submitted a timely and complete application before the permit expiration date. The Old General Permit lays out a process under which seafood processors may submit a Notice of Intent to be covered by the permit.

32. On October 31, 2008, ADEC assumed full authority to administer the wastewater and discharge permitting and compliance program for Alaska.

33. On or about January 1, 2021, ADEC transferred the Old General Permit to Peter Pan.

34. On October 29, 2021, ADEC issued the revised General Permit for Onshore Seafood Processors in Alaska, No. AKG521000, which was initially effective on June 1, 2022, and effective with a minor modification on March 1, 2023 (New General Permit).

35. On or about April 19, 2024, ADEC transferred the New General Permit to SBS.

36. Part III.C.7.b of the Old General Permit states: "An NOI [Notice of Intent] shall include the depth at MLLW [mean lower low water, a measurement akin to low tide] and the distance from shore at MLLW of the end of the outfall pipe at which the effluent is discharged, the name and type of grinder used to treat seafood processing wastewater, and the design grinding dimension."

37. Part V.C.1.f of the Old General Permit states: "The permittee shall not discharge from a severed, failed, or leaking outfall line ten days past its severance, failure or damage unless such damage has been repaired. Failure of the outfall system is to be

reported to EPA and ADEC in accordance with Part VII.C and summarized in the annual report. The permittee shall inform EPA and ADEC at least 60 days in advance of any planned relocation of its outfall as in Part VII.H; relocation of an outfall line does not authorize a new zone of deposit."

38. Parts VII.C.1 and VII.C.2 of the Old General Permit state: "A permittee shall report occurrences of noncompliance to EPA by telephone within 24 hours from the time a permittee becomes aware of the circumstances and provide a written submission within five days to EPA and ADEC."

39. In October 2017, PSF and SBS jointly conducted a Seafloor Monitoring Survey and made these findings:

- The Valdez Facility outfall was floating around 120 feet deep, not terminating at 250 feet deep as reported in PSF's 2012 Notice of Intent;

- PSF and SBS discharged to one combined Zone of Deposit, which was 3.64 acres and contained seafood waste ranging from 10 to 100 cm in thickness; and

- Since the terminuses of both outfalls were located at a similar underwater depth at the time of the survey, it was not possible to identify the origin of the waste based on water depth.

40. In response to the 2017 Seafloor Monitoring Survey, PSF submitted plans to ADEC to relocate its outfall at the Valdez Facility. In 2018, ADEC approved the plans and issued PSF an updated authorization to discharge (for temporary authorization through September 2018), requiring PSF to submit a source control proposal and

COMPLAINT (*U.S. v. PSF, Inc. et al.*), pg. 9

corresponding Notice of Intent before the 2019 season.

41. In October 2018, PSF and SBS performed another joint seafloor survey for the combined seafood waste pile and reported that the Zone of Deposit had grown to 4.58 acres. In addition, PSF found in its own separate survey that the Zone of Deposit at PSF's new outfall location was 0.76 acres.

42. On March 18, 2019, ADEC received PSF's updated Notice of Intent, which included no meaningful source control. PSF's 2018 Annual Report stated that 1.4 million pounds of seafood waste was discharged from the relocated outfall at the Valdez Facility between May and September 2018.

43. At the end of the 2020 season, PSF and SBS reported that the continuous waste coverage of the Zone of Deposit was 1.65 acres and discontinuous waste coverage was 0.16 acres.

44. In September 2021, Peter Pan and SBS reported the area of continuous seafood waste coverage of the Zone of Deposit to be 3.12 acres and discontinuous waste coverage measured an additional 1.45 acres.

45. In November 2022, Peter Pan reported the following regarding its Zone of Deposit in Valdez:

> The total seafood waste and *Beggiatoa*[1] coverage area was estimated as 71,010 square feet (1.63 acres). Of this total, 69,210 square feet (1.59 acres) counts toward the 1.0-acre regulatory limit, which includes sample plots with 50% or greater coverage of seafood waste or *Beggiatoa*. Approximately 20% of that 1.59-acre estimate is attributable to *Beggiatoa* coverage at sample plots without any seafood waste. The 1.59-acre estimate is also more than

---

[1] *Beggiatoa* are bacteria that thrive in underwater environments with low oxygen.

COMPLAINT (*U.S. v. PSF, Inc. et al.*), pg. 10

double the 0.73-acre coverage estimate made for the pre-season 2022 survey.

46. In October 2023, Peter Pan reported the following regarding its Zone of Deposit in Valdez:

> The total seafood waste and Beggiatoa coverage area was estimated as 2.92 acres. Of this total, 2.75 acres counts toward the 1.0-acre regulatory limit, which includes sample plots with 50% or greater coverage of seafood waste or Beggiatoa. Approximately 40% of that 2.75-acre estimate (1.16 acres) is attributable to seafood waste.

### B. Violations of the CWA at the King Cove Facility

47. On September 13, 1999, EPA granted PSF authorization to discharge from its King Cove Facility under an individual NPDES Permit AK 0052388 (Old King Cove Permit). EPA administratively extended permit coverage because PSF submitted a timely and complete application for the facility before the expiration date of the Old King Cove Permit.

48. On or about January 1, 2021, ADEC transferred the Old King Cove Permit to Peter Pan.

49. The Old King Cove Permit authorized PSF and later Peter Pan, subject to other conditions, to discharge 2.7 million pounds per year of one millimeter waste and 14.4 million pounds per year of ½ inch sized waste to its one-acre Zone of Deposit.

50. Part I.B.5.b of the Old King Cove Permit states: "Samples taken in compliance with the effluent monitoring requirements of the permit shall be collected from the effluent stream prior to discharge into the receiving waters."

51. Part I.C.3 of the Old King Cove Permit states: "The permittee shall

COMPLAINT (*U.S. v. PSF, Inc. et al.*), pg. 11

discharge its seafood processing wastewater (Discharge 003) through outfalls in the general configuration described in the permittee's NPDES application and at depths of sixty (60) feet MLLW [mean lower low water] or deeper. Non-contact cooling waters and scrubber water shall be discharged at depths of twenty (20) feet MLLW or deeper. Any change in outfall configuration will require prior approval by EPA and ADEC."

52. Part VII.J.1.a of the Old King Cove Permit states: "The following occurrences of noncompliance shall be reported by telephone to EPA (206-553-1846) and ADEC (907-269-7500) within 24 hours from the time the permittee becomes aware of the circumstances . . . [including] any noncompliance which may endanger human health or the environment . . ."

53. On November 30, 2023, ADEC issued Peter Pan a revised individual APDES permit with number AK0052388 for the King Cove Facility (New King Cove Permit).

## FIRST CLAIM FOR RELIEF
(Unauthorized Discharges and Permit Violations at the Valdez Facility)

54. Paragraphs 1 through 53, above, are each re-alleged and incorporated by reference.

55. PSF's Notices of Intent request authorization to operate the Valdez Facility and discharge waste out of the outfall line terminating at 250 feet water depth.

56. ADEC authorized PSF's discharge based upon its Notice of Intent and allowed a one-acre Zone of Deposit.

COMPLAINT (*U.S. v. PSF, Inc. et al.*), pg. 12

57. In October 2017, PSF discovered its outfall line floated at 120 feet deep and that its Zone of Discharge was greater than one acre.

58. For each day that PSF's past discharging of seafood waste at its Valdez Facility through a broken and floating outfall line into water that was 120 feet deep is a separate violation of the Old General Permit.

59. For each day that PSF's past discharging of seafood waste at its Valdez Facility beyond a one-acre Zone of Discharge is a separate violation of the Old General Permit.

60. PSF's failure to report both the outfall line floating at 120 feet deep and the Zone of Discharge greater than one acre to EPA within twenty-four hours of discovery is a violation of the Old General Permit.

61. For each day that Peter Pan's past discharging of seafood waste at the Valdez Facility beyond a one-acre Zone of Discharge is a separate violation of both the Old and New General Permits.

62. For each day that SBS's current discharging of seafood waste at its Valdez Facility beyond a one-acre Zone of Discharge is a separate violation of the New General Permit.

63. The alleged violations described above each constitutes a violation per day of the applicable NPDES permit or constitutes a discharge without a permit, all in violation of Sections 301 and 402 of the CWA, 33 U.S.C. §§ 1311 and 1342.

64. Unless enjoined, SBS's violations will continue.

COMPLAINT (*U.S. v. PSF, Inc. et al.*), pg. 13

65. Pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), the United States is entitled to injunctive relief to bring the Valdez Facility into compliance with the CWA.

66. The United States is also entitled to daily civil penalties from Defendants under the CWA, as described in Paragraph 21 above, for each of the violations per day alleged above.

**SECOND CLAIM FOR RELIEF**
(Unauthorized Discharges and Permit Violations at the King Cove Facility)

67. Paragraphs 1 through 53 are each realleged and incorporated by reference.

68. In November 2017, PSF conducted a survey that reported the King Cove Facility had a broken outfall line, but PSF did not report the broken line to ADEC until January 2018, in its annual report.

69. In March 2018, ADEC inspected the King Cove Facility and confirmed that the outfall line was broken.

70. PSF replaced the broken outfall in 2018 with a new one but put the new outfall in a different location without getting approval from ADEC.

71. For all times relevant to this Complaint until the 2023 fish processing season, outfall 001/002 at the King Cove Facility discharged wastewater at +10' MLLW, or ten feet above mean lower low water.

72. For all times relevant to this Complaint until January 1, 2021, PSF conducted its effluent sampling for outfall 001/002 in the receiving water, rather than in

COMPLAINT (*U.S. v. PSF, Inc. et al.*), pg. 14

the King Cove Facility.

73. From January 1, 2021 until the 2023 fish processing season, Peter Pan conducted its effluent sampling for outfall 001/002 in the receiving water, rather than in the King Cove Facility.

74. Upon information and belief, outfall 001/002 was decommissioned at the beginning of the 2023 fish processing season.

75. For each day PSF's past discharging of seafood waste at its King Cove Facility from a broken outfall is a separate violation of the Old King Cove Permit.

76. For each day PSF's past discharging of seafood waste at its King Cove Facility from a relocated outfall without first getting approval for the relocation is a separate violation of the Old King Cove Permit.

77. PSF's failure to report the broken outfall at its King Cove Facility within twenty-four hours of discovery is a violation of the Old King Cove Permit.

78. For each day PSF and Peter Pan's discharging of wastewater from outfall 001/002 at +10' MLLW, or ten feet above mean lower low water, was a separate violation of the Old King Cove Permit.

79. PSF and Peter Pan violated the Old King Cove Permit when they each conducted effluent sampling of outfall 001/002 in the receiving water.

80. The alleged violations described above each constitutes a violation per day of the applicable NPDES permit or constitutes a discharge without a permit, all in violation of Sections 301 and 402 of the CWA, 33 U.S.C. §§ 1311 and 1342.

COMPLAINT (*U.S. v. PSF, Inc. et al.*), pg. 15

81. The United States is entitled to daily civil penalties under the CWA from PSF and Peter Pan, as described in Paragraph 21 above, for each of the violations per day alleged above.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, the United States of America, requests that the Court:

1. Permanently enjoin Peter Pan and SBS from discharging pollutants into waters of the United States, except as authorized by the Clean Water Act and the limitations and conditions of Defendant's applicable NPDES permits;

2. Order Peter Pan and SBS to take all necessary steps to comply with the Clean Water Act and the limitations and conditions of the applicable NPDES permits;

3. Order Defendants to pay to the United States a civil penalty up to $66,712 per day per violation of the Clean Water Act or the relevant NPDES permits;

4. Award the United States the costs and disbursements of this action; and

5. Grant the United States such further relief as the Court may deem just and proper.

FOR THE UNITED STATES OF AMERICA:

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

*/s/ Katherine L. Matthews*
KATHERINE L. MATTHEWS
Senior Attorney
Environmental Enforcement Section

Environment and Natural Resources Division
United States Department of Justice
999 18th Street, Suite 370
Denver, Colorado 80202
303-844-1365 (phone)
303-844-1350 (facsimile)
Katherine.Matthews@usdoj.gov

S. LANE TUCKER
United States Attorney
District of Alaska

DUSTIN GLAZIER
Assistant United States Attorney
Federal Building & U.S. Courthouse
222 W. 7th Ave., Room 253
Anchorage, AK 99513
(907) 271-2303

OF COUNSEL:

CAITLIN SODEN
Assistant Regional Counsel
U.S. Environmental Protection Agency
Region 10, Office of Regional Counsel
1200 Sixth Avenue, Suite 155, M/S ORC-11-C07
Seattle, Washington 98101-3140
(206) 553-6635